UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JASON LEE VAN DYKE | § | |
|     Respondent | § | CASE NO. 3:19-mc-00018-B |
| v. | § | |
| | § | |
| JASON LEE VAN DYKE | § | |
|     Respondent | § | |

<u>**RESPONSE TO ORDER TO SHOW CAUSE**</u>

    COMES NOW, Respondent, Jason Lee Van Dyke, and would respectfully ask that this Honorable Court enter an order denying reciprocal discipline before this Court. As grounds therefore, Respondent states as follows:

**I.    INTRODUCTION**

1. This case arises from a grievance against Respondent brought by Thomas Christopher Retzlaff ("Retzlaff" or "Complainant"). Retzlaff has never been a client or prospective client of Respondent. He has never consulted Respondent for legal services and, until he was sued by Respondent for defamation and for tortious interference with his law practice, has never been involved as a party, opposing attorney, judge, witness, bailiff, court staff-member, or juror in any case where Respondent represented a client. Retzlaff has, however, been convicted of multiple felony offenses involving moral turpitude in Texas and earned himself a place on the list of vexatious litigants subject to prefiling orders under Tex. Civ. Prac. & Rem. Code § 11.101.

2. This proceeding is the culmination of a lengthy history between Respondent and Retzlaff beginning in March of 2017 where Respondent, by his own admission,

RESPONSE

    made false and defamatory statements concerning Respondent to Stephen Tyler, District Attorney of Victoria County, Texas, which resulted in the rescission of job offer that had been made to Respondent on or around March 1, 2017. See Ex. A. Although he had already closed his private law practice and made a written offer to purchase a home in anticipation of becoming a felony prosecutor in Victoria County, Respondent was able to obtain other employment with Karlseng, LeBlanc & Rich L.L.C. ("KLR") on or around March 28, 2017.

3. Either Retzlaff, a person closely affiliated with Retzlaff, or a group of persons closely affiliated with Retzlaff, made similar false and defamatory allegations to KLR beginning on or around March 25, 2018. See Ex. B. He/they also began harassing Respondent's supervisors at KLR, which resulted in the termination of Respondent's employment with KLR on the evening of March 27, 2018. See Ex. C. Respondent sued Retzlaff the day after he was fired, and Retzlaff still persisted in harassing Respondent and interfering with his law practice which included, but were not limited to, making false allegations that Respondent is a Nazi, a white supremacist, and a pedophile. See Ex. D.

4. Respondent's civil case against Retzlaff is still pending before the U.S. District Court for the Eastern District of Texas in Case No. 4:18-cv-247. Retzlaff filed a motion to dismiss Respondent's lawsuit against him pursuant to the Texas Citizens Participation Act in that cause, which was denied by the Honorable Amos Mazzant III on July 24, 2018. Judge Mazzant's denial of that motion has been appealed by Retzlaff in a Case No. 18-40710 in the 5th Circuit Court of Appeals. Oral argument has been requested by both parties in that case, but the 5th

       Circuit has not yet set the case for oral argument or otherwise entered an order disposing of the appeal.

5. Retzlaff has now extended this harassing conduct toward members of Respondent's family. This includes Respondent's seventy-year-old mother (who is currently fighting breast cancer) and his brother who works overseas. See Ex. E. On November 7, 2018, Respondent filed an injunction against harassment against Retzlaff in the Superior Court in and for Maricopa County, Arizona as part of his ongoing efforts to stop the ongoing harassment of him and his family by Retzlaff. The superior court entered an order denying the request for injunctive relief, but not before Retzlaff removed the case to the U.S. District Court for the District of Arizona in Case No. 2:18-cv-04003. The Honorable Susan M. Brnovich has since remanded that case to the Superior Court for want of jurisdiction. The superior court has continued to deny any relief to Respondent.

6. The sole allegation in the complaint that is the subject of this proceeding is an alleged violation of Rule 8.04(a)(2) of the Texas Disciplinary Rules of Professional Conduct. Respondent alleges that his conduct, even if it occurred, could not and should not have formed the basis for professional discipline.

## II.   ARGUMENT
### ( Basis for Discipline )

7. Respondent attaches a copy of the evidentiary petition that was filed against him as Exhibit F and incorporates the same by reference herein.

8 Even if all of the factual allegations contained in the Petition were true, the entire petition should have been dismissed because it was factually and legally

insufficient to allege a violation of Rule 8.04(a)(2) of the Texas Disciplinary Rules of Professional Conduct.

**( Background of Texas Rule 8.04(a)(2) )**

9. A strong majority of states plus the District of Columbia have adopted American Bar Association ("ABA") Model Rule 8.4(b) verbatim, which states makes it professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The states that have not adopted the ABA Model Rule are Georgia, Michigan, Ohio, Texas, Vermont, and Virginia.

10. Ohio's Rule 8.4(b) is substantially similar to ABA Model Rule 8.4(b). In Ohio, it is professional misconduct for a lawyer "to commit an *illegal* act that reflects adversely on the lawyer's honesty or trustworthiness." (emphasis added). Similarly, Michigan combined ABA Model Rule 8.4(b) and 8.4(c) into a single rule, which makes it professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer."

11. Louisiana and Virginia both have rules that deviate from ABA Model Rule 8.4 inasmuch as they case a far wider net with respect to conduct for which a lawyer can be professionally sanctioned. According to Virginia Rule 8.4(b), it is professional misconduct for a lawyer "commit a criminal *or deliberately wrongful act* that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." (emphasis added). Louisiana makes it professional misconduct for a

RESPONSE

lawyer "*to commit a criminal act*, especially one that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

12. In contrast, both Vermont and Georgia have approved substantial departures from ABA Model Rule 8.4(b). In Georgia, Rules 8.4(a)(2)-(3) make it professional misconduct for a lawyer to "be convicted of a felony, [or] be convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law." Georgia is the only state with a rule that *explicitly* requires a criminal conviction as a pre-requisite to professional discipline.

13. While Vermont does not require a conviction, it has a similarly narrow view of the type of conduct for which a lawyer can be professionally discipline. Vermont's Rule 8.4(b) makes it professional misconduct for a lawyer to "engage in a serious crime, defined as illegal conduct involving any felony or involving any lesser crime a necessary element of which involves interference with the administration of justice, false swearing, intentional misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a 'serious crime."

14. Texas has adopted a standard that is similar to the Vermont standard. Texas Rule 8.04(b)(2) makes it professional misconduct for a lawyer to "commit a serious crime or commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Texas Rule 8.04(b) further describes as "serious crime" as "barratry; any felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent

RESPONSE

or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes."

15. However, Texas has chosen to be an anomaly among states inasmuch as the definition of the word "fitness" is clearly defined in the Texas Disciplinary Rules of Professional Conduct as follows:

> "Fitness" denotes those qualities of physical, mental and psychological health that enable a person to discharge a lawyer's responsibilities to clients in conformity with the Texas Disciplinary Rules of Professional Conduct. Normally a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations.

This is different from a substantial majority of other states which, within the context of Rule 8.4(b) (our Rule 8.04(a)(2)) use a broader definition of "fitness", such as that developed in standards for bar admission or through a verbatim adoption of the following comment to ABA Model Rule 8.4(b):

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

16. In addition to specifically defining the word "fitness" in the *Texas Disciplinary Rules of Professional Conduct*, the State of Texas has deliberately stepped away from the ABA's commentary to their Model Rule 8.4 (our Rule 8.04(a)(2)) with

RESPONSE

the following comment:

> Many kinds of illegal conduct reflect adversely on fitness to practice law. However, some kinds of offenses carry no such implication. Traditionally in this state, the distinction has been drawn in terms of those crimes subjecting a lawyer to compulsory discipline, criminal acts relevant to a lawyer's fitness for the practice of law, and other offenses. Crimes subject to compulsory discipline are governed by TRDP, Part VIII. In addition, although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for criminal acts that indicate a lack of those characteristics relevant to the lawyer's fitness for the practice of law. A pattern of repeated criminal acts, even ones of minor significance when considered separately, can indicate indifference to legal obligations that legitimately could call a lawyer's overall fitness to practice into question

In writing its own commentary to its version of ABA Model Rule 8.4(b), Texas deliberately chose to remove any and all references to examples of offenses for which a lawyer can be professionally disciplined, relying instead on both the definition of "fitness" set forth in the rules, the definition of a "serious crime" set forth in Rule 8.04(b), and the definition of an "intentional crime" set forth in Rule 1.06(V) of the Texas Rules of Disciplinary Procedure (defining an "intentional crime" as (1) any Serious Crime that requires proof of knowledge or intent as an essential element or (2) any crime involving misapplication of money or other property held as a fiduciary).

17. The case against Respondent was *not* an action for compulsory discipline under which the Commission for Lawyer Discipline ("CLD") has alleged that Respondent has committed an "intentional crime". Ex. F, ¶ IV. Furthermore, CLD has not alleged that Respondent has committed a "serious crime" within the definition of Rule 8.04(b). Ex. F. ¶ IV. CLD's sole assertion is that "Respondent repeatedly told Complainant to kill himself and made multiple threats of physical

violence to Retzlaff, thereby committing criminal acts that reflect adversely on Respondent's honesty, trustworthiness or fitness as a lawyer." Ex. F, ¶ IV. There are no allegations relating or pertaining to a violation of any rule other than Rule 8.04(a)(2). Ex. F, ¶ IV.

### ( Applying The Texas Standard To This Case )

18. The Texas Disciplinary Rules of Professional Conduct are treated like statutes. *O'Quinn v. State Bar of Texas,* 763 S.W.2d 397, 399 (Tex.1988). Unlike Virginia's Rule 8.4(b) (which permits discipline for either a criminal or deliberately wrongful act) the express wording of Rule 8.04(a)(2) requires the commission of a criminal act on its face. See *supra* ¶ 11.

19. There is no dispute in this case that Respondent has not criminally charged or convicted of any of the supposedly criminal acts related to the conduct alleged in CLD's petition. In fact, CLD failed to plead which specific crimes Respondent is alleged to have violated.

20. Respondent propounded several interrogatories to CLD in this case to determine precisely which penal statutes he has been accused of violation. Specifically, CLD propounded the following interrogatory:

>   7.   Please ·state all criminal acts that you allege were committed by Respondent in violation of Rule 8.04(a)(2). For each such criminal act, please state the date upon which the criminal act was committed, the county in which the criminal act was committed, the precise statute that you allege was violated by Respondent, the grade of offense that you allege was committed (e.g. misdemeanor or felony), and the maximum range of punishment for said offense.

With few exceptions (such as dates), CLD responded by stating that Respondent violated the following statutes: "Texas Penal Code, Chapter 22 (22.01, 22.07) and

RESPONSE

any federal law counterpart, Chapter 42 (42.07, 42.072) and any federal law counterpart; 25 CFR 11.400, 25 CFR 11.402; misdemeanor and/or felony." It should be noted that 24 CFR 11.400 and 11.402 relate to conduct committed on Indian reservations and are completely inapplicable to this case.  See Ex. G.

21. In attempting to determine how CLD intended to prove that Respondent's conduct affected his "honesty", "trustworthiness", or "fitness" to practice law, Respondent inquired as follows:

> 8. Please state precisely the manner in which you allege any of the criminal acts alleged in your response to interrogatory seven above reflect adversely on Respondent's "honesty".
>
> 9. Please state precisely the manner in which you allege any of the criminal acts alleged in your response to interrogatory seven above reflect adversely on Respondent's "trustworthiness".
>
> 10. Please state precisely the manner in which you allege any of the criminal acts alleged in your response to interrogatory seven above reflect adversely on Respondent's "fitness as a lawyer in other respects." In making your response to this interrogatory, "fitness" has the same meaning as the term is defined in the Texas Disciplinary Rules of Professional Conduct.

CLD responded to each of these interrogatories with the following response:

"Petitioner objects to this interrogatory in that it violates Texas Rules of Civil Procedure 197.1 by requiring Petitioner to marshal all of its available proof or the proof that Petitioner intends to offer at trial. Subject to and without waiving said objection, Petitioner responds as follows: The nature of the offenses reflect adversely on Respondent's honesty, trustworthiness and fitness as a lawyer. The crimes committed and threats propounded call into question Respondent's moral fitness to continue to practice law. Respondent committed crimes of moral turpitude which reflect adversely on Respondent's honesty, trustworthiness, or fitness as a lawyer. Respondent's deliberate actions, repeated death threats, and other harassing and threatening statements reflect adversely on Respondent's honesty, trustworthiness and fitness as a lawyer. Respondent has failed in his obligation to maintain the highest standards of ethical conduct and has failed to conform to the requirements of the law resulting in a possible loss of respect and confidence in the profession. Respondent's actions exhibit qualities of mental and psychological health that reflect Respondent's lack of fitness to practice law."

RESPONSE

See Ex G.

22. Based the combination of these undisputed facts and CLD's responses to discovery in this case, these are the only possible crimes that CLD could allege against Respondent:

   1. Tex. Penal Code § 22.01(a)(2)   Assault by Threats   Misd. C
   2. Tex. Penal Code § 22.07(a)(2)   Terroristic Threat   Misd. B
   3. Tex. Penal Code § 42.07(a)(2)   Harassment           Misd. B
   4. Tex. Penal Code § 42.07(a)(7)   Harassment           Misd. B
   5. Tex. Penal Code § 42.072        Stalking             Felony 3

23. Whether a crime is one involving moral turpitude is a question of law. *State Bar of Texas v. Heard,* 603 S.W.2d 829, 835 (Tex.1980). Moral turpitude has been traditionally defined as anything done knowingly contrary to justice, honesty, principle, or good morals." *Muniz v. State*, 575 S.W.2d 408, 411 (Tex. App. -- Corpus Christi 1972, writ ref'd n.r.e). Immoral conduct is that conduct which is willful, flagrant, or shameless, and which shows a moral indifference. *Id*. [M]oral turpitude connotes a fraudulent or dishonest intent." *Heard,* 603 S.W.2d at 835.

24. A litany of Texas case have considered the question of whether an assault constitutes a crime of moral turpitude, possibly beginning with *Kemper v. State*, in which the Texas Court of Criminal Appeals held that simple assault is *not* a crime of moral turpitude. 138 S.W. 1025 (Tex. Crim. App. 1911). The only deviation from this standard was described in *Hardeman v. State*, where the Court held that a simple assault by a man against a woman was a crime involving moral turpitude. 868 S.W.2d 404, 407 (Tex. App. -- Austin 1993). However, Texas courts remain split even on that question. *Jessup v. State*, 853 S.W.2d 141, 144

RESPONSE

(Tex.App.--Fort Worth 1993, pet. ref'd) (opining that misdemeanor assault on a women is not a crime of moral turpitude).

25. Even in the specific context of state bar disciplinary proceedings, Texas courts have been loathe to set any kind of "per se" rule that assaultive offenses are crimes of moral turpitude. Such offenses have correctly been held in sharp contrast to those specifically involving dishonest conduct for personal gain. See *Turton v. State Bar of Texas*, 775 S.W.2d 712 (Tex. App. -- San Antonio 1989).

26. If Texas courts have consistently held that, except in the conduct of a man committing crimes against a woman, that assaultive offenses under Section 22 of the Texas Penal Code are *not* crimes of moral turpitude, it certainly stands to reason that a *threat* to commit such a crime also fails to meet the criteria for a crime of moral turpitude. This fact is mirrored by comment two to Rule 8.4(b) of the Tennessee Rules of Professional conduct, which uses "minor assault" as an example of a crime that would not subject a lawyer to discipline.

27. The question of whether the harassment and stalking offenses are considered "crimes of moral turpitude" is an open question in Texas. In an unpublished opinion, only one court has specifically held that harassment is not a crime of moral turpitude. *Vargas v. State*, No. 04-16-00212-CR (Tex. App. -- San Antonio 1997). Such offenses would not, in any case, meet the definitions of crimes of moral turpitude in light of *Muniz* and *Heard*.

28. In attorney discipline cases, courts have also held that "the question of whether a particular crime involves moral turpitude is to be determined by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in

RESPONSE

the practice of law. *Heard*, 603 S.W. 2d at 835. Even if CLD could have meet its burden in proving each and every element of any one, or all, of these offenses, it still could not have meet its burden in proving that Respondent violated Rule 8.04(a)(2) because none of these offenses reasonably call into question Respondent's honesty, trustworthiness, or fitness as a lawyer in other respects. The is especially true in light of the undisputed facts set forth in paragraphs 2 - 4 above.

29. Retzlaff has an extensive criminal history in Texas. See Ex. H. His history of criminal conduct is so severe that a district court in Bell County, Texas terminated his parental rights to his children. Ex. I. In civil cases filed in California by another victim of Retzlaff, his two children filed affidavits detailing how they continue to be harassed by Retzlaff. Ex. J. Since he is unable to harass people through the filing of frivolous litigation, Retzlaff has now chosen to use the attorney discipline process and the Internet to abuse Respondent, harass his family members, and contact his clients with the intent of causing as much financial harm to Respondent as possible. In an email to Respondent, Retzlaff admitted that it was his goal to prevent Respondent from earning any kind of income. See Ex. K.

( Conclusion )

30. The disciplinary petition filed against Respondent by CLD was so clearly lacking in both factual and legal merit that the conclusion reached should not be accepted by this or any other Court as a sufficient basis for professional discipline. This is especially true in light of the fact that the so-called "threats" which formed the

        basis for the petition were not prosecuted and, even if they were made by Respondent to Retzlaff, were directed at any individual who has stalked Respondent repeatedly for nearly two years.

31.    Respondent has changed his e-mail address and telephone number. He is selling his home and working to be accepted into the address confidentiality program of the Texas Attorney General so that Retzlaff will be unable to track him to his new residence. He has filed multiple lawsuits and multiple reports with both state and federal law enforcement against Retzlaff only to find that he has no real recourse against an individual who can only be described as a psychopath.

### IV.   PRAYER

32.    Respondent prays that this Honorable Court enter an order declining to impose reciprocal discipline in this case.

                                              Respectfully submitted,

                                              <u>/s/ Jason Lee Van Dyke</u>
                                              Jason L. Van Dyke
                                              State Bar No. 24057426
                                              108 Durango Drive
                                              Crossroads, TX 76227
                                              P – (940) 305-9242
                                              Email:  jasonleevandyke@protonmail.com